**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

DONALD R. CARTER II,

                Petitioner,

v.                                CIVIL ACTION NO.   5:12-cv-05731
                                (Criminal No. 5:10-cr-00229-01)

UNITED STATES OF AMERICA,

                Respondent.


**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("Section 2255 Mot.") (Document 44), filed in this matter on September 21, 2012, wherein Petitioner asserts that his retained counsel rendered constitutionally ineffective assistance by failing to reasonably investigate the loss occasioned by his bank fraud conviction and by failing to engage a forensic accountant. (Section 2255 Mot. at 4.)   By *Standing Order* (Document 46) entered on September 21, 2012, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.   On March 18, 2013, the Magistrate Judge submitted a *Proposed Findings and Recommendation* ("PF&R") (Document 49), wherein it is recommended that this Court deny the Petitioner's Section 2555 motion and remove this action from the Court's docket. With permission of this Court, Petitioners' objections to the PF&R were due by June 15, 2013. (Order (Document 59)) (granting Petitioner's second request for an extension of time to file objections.)   Petitioner timely filed objections on June 14, 2013.

Upon consideration of the Section 2255 Motion, the PF&R and Petitioner's objections, the Court finds that Petitioner's objections to the PF&R **are without merit**, that the PF&R should be **adopted**, and that Petitioner's Section 2255 Motion should be **denied**.

*I.*

On January 6, 2011, in this Court, Petitioner pled guilty to an Information charging him with bank fraud and tax evasion, in violation of 18 U.S.C. § 1344 and 26 U.S.C. § 7201 respectively. (*United States v. Carter*, Crim. No. 5:10-cr-0229 (S.D. W. Va. Sept. 23, 2011)). Petitioner pled guilty pursuant to a plea agreement which included the parties' agreed statement of facts to support the charged offenses.   (Plea Agreement at 20-23, *United States v. Carter*, Crim. No. 5:10-cr-0229 (S.D. W. Va. Sept. 23, 2011), ECF No. 14).   Relevant to the instant motion, the statement of facts provided, in part, that:

> From at least early 2005 through August 31, 2006, Roy Leon Cooper ("Cooper") served as a vice president and loan officer for United Bank . . . . Among other things, Cooper was responsible for producing residential and commercial loans.

> In November 2005, Donald R. Carter II ("Carter") purchased the twenty-three remaining undeveloped lots in the Lamplighter Valley Subdivision, situated in the city limits of Lewisburg, West Virginia, for approximately $18,600 per lot. Carter desired to build 'spec' homes on the remaining lots. . . . These types of loans represent an increased risk to the lender, which is generally offset with stricter underwriting requirements and a higher interest rate on the mortgage.

> Carter could not obtain multiple construction loans for 'spec' homes in his own name at one time because, among other things, Carter's individual financial circumstances and United Bank's individual lending limits and underwriting criteria.

> In late 2005 or early 2006, Cooper and Carter devised a plan to secure financing for Carter to build 'spec' homes on the Lamplighter lots.  Carter's friends and family members acted as

2

'straw buyers' and applied for one-year, interest-only mortgages from United Bank to purchase a lot from him and obtain a construction loan in their name to build a residential home in the Lamplighter Valley subdivision.

Although it would appear to United Bank that the straw buyers were building 'second' homes in the Lamplighter [subdivision] for their own use and enjoyment, none of the straw buyers ever intended to move to the . . . subdivision or treat the new construction as a second home.  Further, none of the straw buyers intended to pay the mortgage payments or participate in the construction of the home.   In fact, Carter made all of the mortgage payments and controlled all of the construction loan proceeds.

In exchange for obtaining the loans, Carter generally paid each straw buyer $15,000 per loan closed by Cooper.

. . . .

Among other loans closed on April 13, 2006, Cooper simultaneously closed loans for lots 15 and 19 of the Lamplighter subdivision for two of Carter's relatives . . . a married couple. . . . The construction loan on each lot was $300,104.03. . . .

The couples' residential loan applications . . . contained a number of material false statements intended to mislead United Bank into funding the loans [including false pay stubs indicating the couple made approximately $80,000 a year although the couple actually earned $30,000 per year]. . . .

After the construction loans closed, Carter began drawing loan proceeds, but misappropriated a portion of the construction funds for personal expenses. . . .

As of October 2006, Carter only partially completed four homes, which United Bank was forced to short-sale each property at a loss. . . . In total, from January to August 2006, Cooper approved sixteen lot purchases and construction loans for Carter in the Lamplighter Valley subdivision totaling $4,483.480.   As of October 2006 when Cooper left the employment of United Bank, Carter had drawn down $1,957,630.31 in loan proceeds.

3

(Plea Agreement, Ex. B. Stipulation of Facts (Document 14) at 21-22.)   Additionally, the parties' plea agreement also contained the parties' specific agreements relative to sentencing guideline calculations.  (Plea Agreement ¶ 13.)  Germane to the instant motion, the parties agreed that Section 2B1.1 of the United States Sentencing Guidelines applied to a violation of 18 U.S.C. § 1344 (bank fraud) and that the offense level would be determined by beginning with a base offense level of seven.  (*Id.*)  Additionally, Petitioner and the United States agreed to certain specific offense characteristic enhancements.   Specifically, they agreed that the base offense level should be increased by sixteen levels because the loss amount was between $1 million and 2.5 million (U.S.S.G. § 2B1.1(b)(1)(I)), that a two level enhancement was warranted because the offense involved sophisticated means (U.S.S.G. § 2B1.1(b)(9)(C)) and that Petitioner derived more than $1 million in gross receipts (U.S.S.G § 2B1.1(b)(14)(A)[1].   (*Id.*)

On September 21, 2011, during sentencing, the Court found that Petitioner had a Total Offense Level of twenty-four, after consideration of the three-level reduction for acceptance of responsibility, and a Criminal History Category of one.   This Court sentenced Petitioner to fifty-one months imprisonment, a three-year period of supervised release, and $200 special assessment fee.   (*United States v. Carter*, Crim. No. 5:10-cr-0229 (S.D. W. Va. Sept. 23, 2011)).  The Court also ordered Petitioner to pay restitution of $1,957.630.31 of which Petitioner is jointly and severally liable with Roy Leon Cooper.[2]  Judgment was entered on September 23, 2011.

---

1    Petitioner's plea agreement also contained a reservation of certain appellate rights and a waiver of others. Particularly, Petitioner reserved his right to appeal the Court's determination of his adjusted offense level, before consideration of acceptance of responsibility, if it differed from what was stated in Paragraph 13.   (Plea Agreement ¶ 14.)  However, he waived his right to appeal any sentence of imprisonment or fine on any ground so long as his sentence of imprisonment or fine was below or within the Sentencing Guideline range corresponding to offense level 27.   (*Id.*)   He also waived his right to challenge his plea, conviction and sentence by post-conviction collateral attack.  (*Id.*)  However, he maintained the right to seek review for ineffective assistance of counsel.    (*Id.*)

2    Through the plea agreement, the parties agreed that Petitioner owed restitution and that he would not "appeal any

Petitioner did not appeal his conviction or sentence. Consequently, his conviction became final on October 7, 2011, when his opportunity to appeal expired.   (*See* Fed.R.App.P. 4(b)(1)(A)). Although Petitioner's appellate waiver precludes a direct appeal and post-conviction review of most issues relative to his sentence and conviction, the waiver does not prevent a post-conviction challenge to the effectiveness of counsel.   (Plea Agreement ¶ 14.)

## *II.*

On September 21, 2012, Petitioner filed the instant Section 2255 Motion (Document 44). In his only challenge, Petitioner asserts that his trial counsel was ineffective when counsel failed to employ a forensic accountant, as requested, to verify the loss amount attributed to Petitioner as a result of his conviction for bank fraud.   (Section 2255 Motion at 4.)   Petitioner contends that he informed his counsel that the plea agreement's inclusion of an enhancement based on the $1.9 million loss was inaccurate and that he desired to contest it.   (*Id.*)   However, his counsel did not perform the requested investigation of the loss amount or contest the enhancement or his major role in the conspiracy.[3]  (*Id.*)   Petitioner asserts that he engaged a forensic accountant after his sentencing and that the accountant's findings support his previously held position relative to the loss amount.   Petitioner argues that his attorney's failure to perform a "basic investigation" renders the representation ineffective. (*Id.*)   Petitioner lists his counsel as Michael Callaghan for his arraignment, plea and sentencing.  (*Id.* at 10.)   Petitioner requests his "sentence to be vacated or, in the alternative, a hearing be granted on the issues raised."   (*Id.* at 13.)

---

order of the District Court imposing restitution unless the amount of restitution imposed exceeded 1,957.630.31." (*Id.* ¶ 5.)   Petitioner further agreed "[t]hat he and other coconspirators derived $1,957,650.31, more or less, in gross proceeds from certain bank fraud offenses, i.e., violations of 18 U.S.C. § 1344."   (*Id.* ¶ 6.)

3    Notwithstanding Petitioner's assertion, the applicable advisory guideline calculation did not include any adjustment or enhancement for his role in the offense pursuant to Section 3B1.1.   Consequently, the Court will not consider any argument relative to Petitioner's "major role" in the offense.

Petitioner attached to his Section 2255 Motion his signed affidavit (Document 44 at 14-15), wherein he expounds on his challenge.   He contends that his conduct did not comport with the Government's theory of the case inasmuch as it believes that he applied for and obtained bank funds and these funds were never used for building homes.   He insists that he used the bank monies in the completion of the construction project and that he asked his counsel to investigate "how the funds were disbursed."   (*Id*. at 14.)   Petitioner asserts that instead of investigating the loss amount, his counsel informed him of the government's plea offer and advised that it would be in his best interest to accept it.   He further asserts that his counsel told him that challenging the Government's factual assertions "would lead to withdrawal of the offer and a much harsher sentence," but that if he accepted the plea he would "most[] likely receive a probationary term or at worst home confinement." (*Id*. at 15.)   Petitioner asserts that he later learned that the government's loss calculation could have been challenged and that the loss amount was incorrectly attributed to him.   According to Petitioner, "[h]ad [a forensic review] been done [he] would not have entered the plea that [he] did." (*Id*. at 15.)   Finally, Petitioner contends that the fault lies with his attorney, who "fail[ed] to explore all possible defenses" on his behalf.   (*Id*.)   Petitioner did not support his motion with any report or documentation from the post-conviction forensic accountant's investigation.

In his PF&R, the assigned Magistrate Judge considered Petitioner's contention that his trial counsel did not perform an investigation into the charged offense and found that Petitioner's counsel was not ineffective.   In so doing, Magistrate VanDervort first found that Petitioner failed to carry his burden inasmuch as he made only bare allegations that his counsel was ineffective and did not allege with specificity what the investigation would have revealed and how it would have

6

altered the outcome of the District Court proceedings.   (PF&R at 7.)   As a second ground for his determination, the Magistrate Judge assumed, for purposes of issuing a recommendation, that Petitioner's allegations were sufficient and that his counsel failed to conduct an investigation into the loss amount used in his sentence calculation.   Notwithstanding these assumptions, Magistrate Judge VanDervort found that Petitioner did not receive ineffective representation inasmuch as the losses from his offenses of conviction were in the records of the victimized bank and the IRS and that the loss amounts were easily and accurately calculated.   (PF&R at 7.)   The Magistrate Judge asserted that Petitioner "would have had to knock well over $1 million off of those calculations" to have an impact on his applicable advisory guideline sentence and that an attorney's decision not to conduct an investigation in this regard "cannot be said to have fallen below an objective standard of reasonableness.   (PF&R at 7-8.)   Finally, Magistrate Judge VanDervort considered how the United States Sentencing Guidelines applied to the determination of the loss amount used in the Section 2B1.1 calculation by reviewing the definitions of "actual loss" and "intended loss." (PF&R at 8) (discussing U.S.S.G §2B1.1, comment. (n.3) wherein the general rule is set forth that "loss is the greater of actual loss or intended loss" subject to certain exclusions.)   The Magistrate Judge found that Petitioner "significant[ly] benefit[ted]" from his plea agreement because it allowed for a certain loss figure when the Court could have found that his "actual loss" and "intended loss" might have been higher. (PF&R at 8.)   Magistrate Judge VanDervort asserted that a challenge to the plea agreement provision may have resulted in this Court finding that "the reasonably foreseeable pecuniary harm" or the "intended pecuniary harm" from the bank fraud was the amount of the approved loans or $4,483,480. (PF&R at 8-9.)   The Magistrate Judge found that application of the full loan amounts in the guideline calculation would have resulted in a

higher advisory guideline sentencing range.   Magistrate Judge VanDervort also noted that if Petitioner falsely or frivolously contested the loss amount, he would have lost credit for his acceptance of responsibility.   In either scenario, his guideline sentence may have been higher, resulting in a sentence longer than that imposed.   Consequently, the Magistrate Judge found that Petitioner was not prejudiced by the failure of his counsel to further investigate the loss attributed to his bank fraud conviction.   Given the finding that Petitioner was competently represented throughout the criminal proceedings, the Magistrate Judge recommended that this Court deny the Section 2255 Motion and remove this matter from the docket.   (PF&R at 9.)   In his full consideration of Petitioner's argument, the Magistrate Judge determined that an evidentiary hearing was not warranted because the record conclusively revealed that Petitioner was not entitled to relief.   (PF&R at 6.n.2.)

## III.

Petitioner has timely filed objections to the PF& R wherein he asserts two specific challenges.   (Objection to the Proposed Findings and Recommendations of Magistrate Judge R. Clarke VanDervort ("Pet.'s Obj.") (Document 62)).   This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a

specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).

In a demonstration of a violation to the Sixth Amendment right to effective assistance of counsel, an aggrieved defendant must prove: (1) deficient performance by his counsel and (2) that this deficient performance was prejudicial. *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   The United States Supreme Court instructed, in *Strickland*, that a lawyer's performance is deficient when the representation falls "below an objective standard of reasonableness."   (*Strickland*, 466 U.S. at 688).   The Court must review the particular facts of the case in view of reasonably effective assistance under "prevailing professional norms." (*Id.*)   To avoid Monday morning quarterback scenarios, "[a] fair assessment of attorney performance requires . . . [consideration of] conduct from counsel's perspective at the time."   (*Id.* at 689.)   "[A] defendant must overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"   (*Baker*, 719 F.3d at 318) (quoting *Strickland*, 466 U.S. at 689.)

However, an error by counsel does not automatically result in setting aside the criminal conviction, judgment or sentence.   Instead, counsel's deficient performance must be prejudicial to the defendant.   The prejudice prong, or the second part of the test, is satisfied only "if a petitioner can demonstrate a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'"   (*Mueller v. Angelone*, 181 F.3d 557, 579 (4th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694.)   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   (*Strickland*, 466 U.S. at 694.)   At bottom,

the "ultimate focus of inquiry [on a claim for ineffective assistance of counsel] must be on the fundamental fairness of the proceeding whose result is being challenged."  (*Id*. at 696.)

<em>IV.</em>

Before the Court considers Petitioner's asserted objections, the Court finds that Petitioner failed to object to the Magistrate Judge's finding that he did not carry his burden in demonstrating his counsel's ineffectiveness when he failed to specifically assert what the requested investigation would have revealed and how it would have altered the outcome of the District Court proceedings. Instead, in his objections, Petitioner contends that his forensic accountant, Robert Rufus, a CPA from Rufus and Rufus, found that based on the "records he examined," the loss attributed to Petitioner was "under one million dollars[.]"  (Pet.'s Obj. at 4.)  It is the Petitioner's burden to show that his counsel's performance was deficient and that the deficiency was prejudicial. However, Petitioner does not expound on the records reviewed.   Indeed, he has not provided the Court with any of these records or Mr. Rufus' calculations.  Even if the Court were to credit Petitioner's contention that his counsel's performance was deficient in the failure to conduct a reasonable investigation, or to engage a forensic accountant, he has failed to provide any evidence of prejudice beyond his "bare bone" contention.   According to Petitioner, the actual loss attributed to him should have been under one million dollars and not the $1,957,630.31, he stipulated to in his plea agreement.  Petitioner, through his accountant, failed to offer any calculation of the construction costs of the Lamplighter properties or demonstrate how such costs were paid.  He has neither demonstrated nor disclosed any evidence of monies that should have been deducted from the loss amount because he did not receive the same, any expense or monies his counsel should have asserted did not apply to the loss amount or the offense of conviction for

10

bank fraud, or any evidence of monies improperly included in the loss figure.   (*See* U.S.S.G. §2B1.1, comment. (n.3(D)(i))) (providing that loss amount shall not include interest, finance charges, late fees, penalties . . . or other similar costs.)   Petitioner has not shown that a forensic review would have revealed that certain credits against the loss should have been applied. (*See* U.S.S.G. §2B1.1, comment. (n.3(E))).   Instead, he states in his objection, that "[t]he records used by Mr. Rufus to reach his conclusion are available and can be submitted for review."   (*Id*. at 5.) The opportunity and time for the production of this evidence was before the Petitioner, yet he failed to produce the same.   Petitioner has merely submitted the Affidavit of Mr. Rufus, wherein Mr. Rufus states that an examination was completed that led him to the opinion that the loss amount should be lower. (Affidavit of Robert Rufus (Document 62) at 2).   Consequently, the Court agrees with the Magistrate Judge that Petitioner has failed to show to a reasonable probability that had an investigation into the loss amount by a forensic accountant been pursued by his counsel, the result of the proceeding would have been different.   Therefore, the Petitioner has not demonstrated his entitlement to relief.

Given the foregoing finding, the Court finds that Petitioner's objection that the Magistrate Judge erred in failing to conduct an evidentiary hearing is without merit.   Section 2255 of Title 28 provides in relevant part that

> Unless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b) (emphasis added).   For the reasons previously discussed, the records before the Court do not conclusively demonstrate that Petitioner would not have pled guilty to the charge

of bank fraud or that his sentence would have been different had counsel engaged a forensic accountant.   Moreover, despite the Magistrate Judge's clear admonition regarding the lack of evidence before the Court on his failure to investigate claim, Petitioner failed to present in his objection any evidence supporting his purported expert's opinion about a required reduction to the loss amount.   He has simply asserted that it would be available without providing an explanation as to why it was not presented with the Section 2255 motion or with the objection.   Upon consideration of the foregoing, the Court finds that the record conclusively establishes that the Petitioner is not entitled to relief in this matter.   Consequently, Petitioner's objection to the Magistrate Judge's failure to conduct an evidentiary hearing is **overruled**.

While the above findings are sufficient to dispose of Petitioner's objections, the Court will consider briefly the balance of his claim.   Petitioner argues that the Magistrate Judge erred when he concluded that the plea agreement was advantageous to the Petitioner because without his specific plea agreement, the Court could have found him liable for over $4,000,000 based on any consideration of the intended loss from Petitioner's criminal conduct.   Petitioner argues that on the day after his plea hearing, he met with Mr. Rufus and that Mr. Rufus "agreed to investigate the validity of the amount of fraud and tax liabilities[.]"[4]   At some point, Mr. Rufus concluded that the "actual loss attributed to [him]" was lower than the Government represented because "over one million dollars alleged to have gone to Carter illegally was actually spent on construction costs for the project and should not have been used to enhance the guideline amounts."   (Pet.'s Obj. at 4.)[5]

---

4    Petitioner contends he was accompanied "by an attorney (not trial counsel)" to this meeting.   Petitioner does not explain what prompted this meeting with the CPA, why his trial counsel did not participate in the meeting or identify the attorney who accompanied him to the meeting.

5    Additionally, Petitioner asserts that Mr. Rufus also concluded that the Government's calculation of the tax loss amount was overstated. (Pet.'s Obj. at 4.) Petitioner states that Mr. Rufus determined that the delinquent tax amount attributed to him was $336,580, instead of that calculated by the Government to be over $400,000.   This figure was

According to Petitioner, this argument was never presented to the Court or the Government by defense counsel prior to the sentencing hearing.   Petitioner also asserts that Mr. Rufus contacted his trial counsel to inquire why an investigation of the loss amounts was not performed prior to entering the plea agreement, and the attorney purportedly "admitted" he did not hire a forensic accountant and that he accepted the Government's numbers as reasonable. (Pet.'s Obj. at 4.)

The Court does not find this objection sufficient to refute the Magistrate Judge's findings. This is so, particularly, where there is a lack of evidentiary support for the purported expert's conclusion.   Moreover, the facts of this case render Petitioner's objection immaterial. As the Magistrate Judge correctly explained, the applicable Sentencing Guideline defines loss as the "greater of actual loss or intended loss."   U.S.S.G. §2B1.1, comment 3(A).   Included in Petitioner's presentence investigation report, without objection and as adopted by the court, Petitioner and Cooper facilitated, through Petitioner's family members, the fraudulent lending of at least twelve construction loans.   In total, Cooper obtained approval of sixteen lot purchases and construction loans from United Bank for Petitioner in the Lamplighter Valley community which totaled 4,483.480.   When the loan irregularities became known to United Bank in October 2006, Petitioner had drawn down $1,957,630.31, and only four homes were partially completed. United Bank had to short-sale these homes for a loss, and eleven lots remained with United Bank with mortgage balances that exceeded the value of the undeveloped lots.   United Bank sought reimbursement of the monies drawn on the loan from its insurance carrier, who paid it $1.9 million dollars as a result of Petitioner's criminal conduct for bank fraud.   The loss to United Bank, and its reliance on its insurance coverage, was reasonably foreseeable to Petitioner given the number of

---

communicated to the prosecuting attorney who subsequently agreed to accept Mr. Rufus's calculation and lowered Petitioner's tax loss liability.   (Pet.'s Obj. at 4.)   At sentencing, the Court accepted the parties' agreement, on the use of the lower tax liability amount, for sentencing.

homes he sought to build, the misrepresentations made to United Bank to obtain the loans (which included overstatements of income of actual loan-holders who would not be able to repay the loans), and the sums of loan money misappropriated by Petitioner for his personal expenses and gifts to Cooper.  Consequently, the actual loss to the victim of his crime, United Bank, was sufficient to support the Court's finding that the specific sentence enhancement of Section 2B1.1(b)(1)(I) was warranted.  Petitioner's assertion, that his counsel's failure to investigate the loss amount was prejudicial, is not borne out from the "opinion" of his forensic accountant.  It does not appear on the record before the Court that the investigation would have yielded a favorable outcome that would have resulted in the application of a loss amount lower than one million dollars.  Given the immateriality of Petitioner's objection to the Magistrate Judge's "intended loss" finding, a finding which does not warrant further review, the Court **overrules** Petitioner's objection.

*V.*

Accordingly, the Court **ADOPTS** and incorporates herein the findings and recommendation of the Magistrate Judge as contained in the *Proposed Findings and Recommendation*, and **ORDERS** that Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("Section 2255 Mot.") (Document 44) be **DENIED** and that this matter **DISMISSED** from the Court's docket.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is

14

debatable or wrong and that any dispositive procedural ruling is likewise debatable.   *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance.   Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge VanDervort, counsel of record, and any unrepresented party.

ENTER:      September 10, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

15